UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DURAID HAITHEM FATHI,

                Petitioner,                Case No. 1:13-cv-835

v.                                    Honorable Robert J. Jonker

BONITA HOFFNER,

                Respondent.
_____/

## OPINION

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Following a jury trial in the Oakland County Circuit Court, on September 8, 2008, Petitioner Duraid Haithem Fathi was convicted of eight counts of first-degree criminal sexual conduct (CSC I) involving a person under 13, MICH. COMP. LAWS § 750.520b(1)(a), and four counts of second-degree criminal sexual conduct (CSC II) involving a person under 13, MICH. COMP. LAWS § 750.520c(1)(a). On September 23, 2008, he was sentenced as a second felony offender, MICH. COMP. LAWS § 769.10, to eight terms of 40 to 60 years on the CSC I convictions and four terms of 14 to 22 years on the CSC II convictions.

        Petitioner appealed his convictions to the Michigan Court of Appeals, raising numerous issues, including the five issues presented in his habeas petition. In a 26-page unpublished opinion issued July 20, 2010, the court of appeals affirmed the convictions. Petitioner filed an application seeking leave to appeal to the Michigan Supreme Court, raising the same issues. In an order issued April 6, 2011, the supreme court held the application in abeyance pending

decisions in *People v. Pullen*, No. 142751 (Mich.) and *People v. Watkins*, No. 142031 (Mich.).

Following its decision in the consolidated *Watkins-Pullen* case, *see People v. Watkins*, 818 N.W.2d

296 (Mich. 2012), the Michigan Supreme Court denied Petitioner's application for leave to appeal

on September 4, 2012.

In his habeas petition initially filed on August 4, 2013, and amended on

September 11, 2013, Petitioner raises the following grounds for relief:

I.   MR. FATHI WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE
PROCESS UNDER THE 14th AMENDMENT TO THE UNITED STATES
CONSTITUTION IN THE FOLLOWING WAYS:

A. Mr. Fathi was not given adequate notice of the charges against him;
B. the jury instructions were fatally flawed;
C. double jeopardy;
D. the attorney failed to object.

II.  MR. FATHI WAS DENIED A FAIR TRIAL UNDER THE 14th
AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN
"OTHER ACTS" EVIDENCE WAS ADMITTED WHERE THERE WERE
NO CONVICTIONS FOR THOSE "OTHER ACTS" AND WHERE THE
PREJUDICIAL EFFECT OF THAT EVIDENCE CLEARLY
OUT-WEIGHED THE PROBATIVE VALUE.

III. MR. FATHI WAS DENIED A FAIR TRIAL UNDER THE 14th
AMENDMENT TO THE UNITED STATES CONSTITUTION BY THE
ADMISSION OF EXPERT WITNESS TESTIMONY FROM A PERSON
WHO WAS NOT QUALIFIED AS AN EXPERT, WHOSE TESTIMONY
WAS NOT BASED ON RELIABLE PRINCIPLES AND METHODS, AND
BECAUSE THE UNDERLYING FACTS OR DATA UPON WHICH SHE
BASED HER TESTIMONY WERE NOT DISCLOSED TO THE JURY
AND WERE NOT IN EVIDENCE.

IV.  MR. FATHI NEVER HAD A "CONSCIOUSNESS OF GUILT" TO FLEE
THE COUNTRY AND GIVING THE FLIGHT INSTRUCTION WAS
PLAIN ERROR UNDER THE 14th AMENDMENT TO THE UNITED
STATES CONSTITUTION.

V.    MR. FATHI WAS DENIED DUE PROCESS OF LAW UNDER THE 14th AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN THE SENTENCING COURT USED A CONSTITUTIONALLY INFIRM, SWEDISH CONVICTION IN DETERMINING THE SENTENCE.

(Am. Pet., ECF No. 4, PageID.56-57.)  On March 24, 2014, Respondent filed an answer to the amended petition (ECF No. 10), stating that the grounds should be denied because they are procedurally defaulted, noncognizable, and/or without merit.  On March 24, 2014, Respondent also filed the state-court record, pursuant to Rule 5, RULES GOVERNING § 2254 CASES.  (ECF No. 11.)[1]  Upon review and applying the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA) standards, the Court finds that all habeas grounds are meritless.  Accordingly, the Court will deny the petition for failure to raise a meritorious federal claim.

---

[1]The Rule 5 materials include several transcripts of the trial court proceedings.  The transcripts shall be referenced as follows:

| | |
|---|---|
| May 24, 2007 Preliminary Examination | (Prelim. Examination Tr. I, ECF No. 11-4, PageID.___) |
| May 29, 2007 Preliminary Examination | (Prelim. Examination Tr. II, ECF No. 11-5, PageID.___) |
| June 20, 2007 Preliminary Examination | (Prelim. Examination Tr. III, ECF No. 11-8, PageID.___) |
| May 31, 2007 Arraignment | (Arraignment Tr., ECF No. 11-6, PageID.___) |
| June 7, 2007 Pretrial Hearing | (Pretrial Hr'g Tr. I, ECF No. 11-7, PageID.___) |
| March 11, 2008 Pretrial Hearing | (Pretrial Hr'g Tr. II, ECF No. 11-13, PageID.___) |
| June 28, 2007 Motion Hearing | (Mot. Hr'g Tr. I, ECF No. 11-9, PageID.___) |
| September 19, 2007 Motion Hearing | (Mot. Hr'g Tr. II, ECF No. 11-10, PageID.___) |
| September 26, 2007 Motion Hearing | (Mot. Hr'g Tr. III, ECF No. 11-11, PageID.___) |
| April 30, 2008 Motion Hearing | (Mot. Hr'g Tr. IV, ECF No. 11-13, PageID.___) |
| September 4, 2008 Trial Transcript | (Trial Tr. I, ECF No. 11-14, PageID.___) |
| September 5, 2008 Trial Transcript | (Trial Tr. II, ECF No. 11-16, PageID.___) |
| September 8, 2008 Trial Transcript | (Trial Tr. III, ECF No. 11-17, PageID.___) |
| September 23, 2008 Sentencing Transcript | (Sentencing Tr., ECF No. 11-18, PageID.___). |

**Factual Allegations**

Petitioner is incarcerated at the Thumb Correctional Facility in Lapeer, Michigan. He is serving twelve concurrent terms of imprisonment following his convictions on twelve separate counts of criminal sexual conduct in three consolidated cases in Oakland County Circuit Court.[2] The three cases related to Petitioner's conduct with respect to two victims. The victims will be referenced herein as Complainant 1 and Complainant 2. The cases are distinguished by a particular time frame and the location where Petitioner resided when he committed the offenses.

In case number 07-214–774-FC (herein the "Oak Park case"), Petitioner was charged with five counts of first-degree criminal sexual conduct, five separate instances of engaging in penile/anal penetration with Complainant 1, who was under 13 years of age. Petitioner was also charged with two counts of fourth-degree criminal sexual conduct, two separate instances of engaging in sexual contact with Complainant 2, a person who was at least 13 years of age and under 16 years of age, when Petitioner was at least five years older than Complainant 2. The information indicated that Petitioner had committed the offenses in the City of Oak Park on or about April, 2000 through August, 2000. Although not part of the information, the evidence at trial indicated that Petitioner principally resided at a home in Oak Park, Michigan when he committed these offenses.

In case number 07-214-813-FC (herein the "Pontiac case"), Petitioner was charged with three counts of first-degree criminal sexual conduct, three separate instances of engaging in penile/anal penetration with Complainant 1, who was under 13 years of age. The information

_____

[2]Petitioner was also convicted of two counts of fourth-degree criminal sexual conduct (CSC IV) involving a person between the ages of 13 years old and 16 years old, Mich. Comp. Laws § 750.520e(1)(a). He was sentenced to concurrent terms of 2 years to 3 years for these offenses. At the time he filed his habeas petition, he had fully served and been discharged from those sentences.

-4-

indicated the Petitioner had committed the offenses in the City of Pontiac on or about May 22, 1999 through May 22, 2000.  Although not part of the information, the evidence at trial indicated that Petitioner principally resided at an apartment/condominium in Pontiac, Michigan when he committed these offenses.

In case number 02-215-223-FH (herein the "Madison Heights case"), Petitioner was charged with four counts of second-degree criminal sexual conduct, four separate instances of engaging in sexual contact with Complainant 2, who was under 13 years of age.  The information indicated that Petitioner had committed the offenses between the spring of 1997 and the summer of 1998 in the City of Madison Heights, Michigan.  Although not part of the information, the evidence at trial indicated that Petitioner principally resided in a home in Madison Heights, Michigan when he committed these offenses.

The charges were based only on Petitioner's actions with respect to Complainant 1 and Complainant 2.  Nonetheless, the trial court allowed three other victims to testify.[3]  The mother of Victim C testified as well.  Two police officers, Sergeant Maureen Bergman and Sergeant Troy Taylor from the City of Oak Park also testified regarding their investigation of the charges.  The police testimony disclosed they began investigating Petitioner in August of 2000, following a complaint from the mother of Victim C.  (Trial Tr. II, ECF No. 11-16, PageID.1025-1026.) The police were unable to locate Petitioner for an extended period. (*Id*., PageID.1037-1040.)  He simply disappeared once Victim C's mother attempted to look into her son's report of Petitioner's sexual misconduct.  (*Id*., PageID.1040-1047.)

---

[3]Those witnesses will be referenced herein as Victim A, Victim B, and Victim C, based on the order in which they testified.

The jury also heard expert testimony from Amy Allen, a social worker employed at Care House of Oakland County.  Ms. Allen had no involvement with providing services for Complainants 1 or 2 or Victims A, B, or C.  She was permitted to provide opinion testimony with regard to the dynamics of sexual abuse and common characteristics.  (*Id.*, PageID.1092.)  Finally, the jury heard testimony from Danielle Hankinson, a forensic scientist with the Michigan State Police Crime Lab, regarding DNA testing of a hair found on the underwear of Victim C.  Ms. Hankinson testified that the DNA profile of the hair matched the DNA profile of a sample known to be from Petitioner (*Id.*, PageID.1126-1127.)

Complainant 1, victim of the five counts of first-degree CSC in the Oak Park case and three counts of first-degree CSC charged in the Pontiac case, testified that Petitioner had committed first-degree penile/anal penetration against him roughly 70 times.  (Trial Tr. I, ECF No. 11-14, PageID.649-651,660.)  He described the very first time it occurred in Pontiac, when Complainant 1 was 10-years-old, with some specificity.  (*Id.*, PageID.638-646.)  Petitioner provided the same level of specificity with regard to the first time it occurred in Oak Park, when Complainant 1 was 11-years-old.  (*Id.*, PageID.654-660.)  Complainant 1 also described other facts that differentiated one assault from another based on the different gifts Petitioner gave him afterward or the other persons who might have been in the home at the time of the assault.  Beyond those differences, Complainant 1 described all of the assaults as occurring the same way.

Complainant 2, victim of the four counts of second-degree CSC in the Madison Heights case and the two counts of fourth-degree CSC in the Oak Park case, testified that the first assault occurred in Complainant 2's own home in Madison Heights.  (*Id.*, PageID.716-721.)  Complainant 2 testified that Petitioner assaulted him similarly four times in Petitioner's home in

Madison Heights and two or three times in Petitioner's home in Oak Park.  (Id., PageID.722-729.) Petitioner described the first assault in each location with specificity and testified that the other assaults were similar in nature.

Victims A, B and C described assaults by Petitioner, similar to those described by Complainants 1 and 2, that occurred in Madison Heights, Pontiac, and Oak Park.

The jury returned a verdict of guilty on all fourteen counts after deliberating for a little over an hour.  (Trial Tr. III, ECF No. 11-17.)

## Discussion

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

I.    <u>Insufficient notice</u>

Petitioner complains that the charging documents from the three cases failed to provide him adequate notice of the charges against him. The Due Process Clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to provide him an adequate opportunity to prepare his defense. *See*, *e.g.*, *In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. *Combs v. State of Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976). Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. *Id*. "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)). "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira*, 806 F.2d at 639. In other words, as long as "sufficient

-9-

notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson*, 558 F.2d at 338.

The Michigan Court of Appeals rejected Petitioner's claim of inadequate notice:

The information in Case No.2007-214774-FC gave a time frame of April 2000 through August 2000. It listed five counts of CSC I with [Complainant 1], identified as a person under 13, specifically "penis in anus." It also included two counts of CSC IV, victim between 13 and 16, in regard to [Complainant 2]. Further, the testimony of victims [Complainant 1] and [Complainant 2] at the preliminary examinations provided information on location and time frames. . . .

In Case No.2007-214813-FC, the information specified a time frame of May 22, 1999, through May 22, 2000, and listed three counts of CSC I in regard to [Complainant 1], victim under 13, penis in anus. . . .

In Case No.2007-215223-FH, the information specified that counts 1 and 2 occurred in Spring/Summer 1997, and counts 3 and 4 occurred in Spring/Summer 1998. All four counts were CSC II, person under 13, in regard to [Complainant 2]. . . .

Although the information in each case indicated only a range of months and not specific dates, "[t]ime is not of the essence, nor is it a material element, in criminal sexual conduct cases involving a child victim." And the complainants' testimonies at the preliminary examinations provided further information on location and time frames. Fathi has not demonstrated how his ability to prepare a defense was prejudiced. The defense's theory was that no sexual contact occurred, and defense counsel argued to the jury that the victims were not credible and their testimonies illogical. Fathi does not indicate that he would have presented a different defense had additional details about the alleged offenses been provided in each information. Accordingly, we conclude that Fathi was not denied his constitutional right to notice of the charges against him.

*People v. Fathi*, No. 288330, 2010 WL 2836275 *4-5 (Mich. Ct. App. July 20, 2010) (footnote omitted).

To prevail, Petitioner must demonstrate that the court of appeals' determination is contrary to or an unreasonable application of clearly established federal law as determined by the

Supreme Court of the United States or that it is based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Petitioner's argument does not meet that standard. He relies almost exclusively on the Sixth Circuit Court of Appeals' decision in *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005). The *Valentine* court described the factual background of that case as follows:

> An Ohio jury convicted Michael Valentine of 40 counts of sexual abuse, for which he was sentenced to 40 consecutive life sentences. In bringing a petition for habeas corpus, he contends that the Ohio indictment violated his constitutional right to due process. Valentine was convicted of 20 "carbon-copy" counts of child rape, each of which was identically worded so that there was no differentiation among the charges and 20 counts of felonious sexual penetration, each of which was also identically worded. The prosecution did not distinguish the factual bases of these charges in the indictment, in the bill of particulars, or even at trial. The only evidence as to the number of offenses was provided by the testimony of the child victim, who described typical abuse scenarios and estimated the number of times the abusive offenses occurred, e.g., "about 20," "about 15" or "about 10" times. The District Court issued the writ of habeas corpus with respect to all counts on the ground that the indictment and conviction violated Valentine's federal due process rights to notice of the crime charged with sufficient specificity so that he would not again be put in jeopardy of the same crime.

*Id.* at 628. Valentine challenged two aspects of insufficient notice with regard to his indictment: "(1) the wide date range and (2) the lack of differentiation among the criminal charges." *Id.* at 632. The Sixth Circuit rejected the challenge with regard to the lack of specificity with regard to dates. *Id.* The court, however, upheld the writ on notice grounds because of the prosecutor's failure to anchor the forty criminal counts to forty distinguishable offenses. Because the failure was not corrected before or during trial, the *Valentine* court reasoned, the lack of sufficient notice in the indictment violated Valentine's due process rights. *Id.* at 634.

The charging documents challenged by Petitioner here are very different than the indictment at issue in *Valentine*. With respect to Complainant 1, the charges are specific as to the act alleged (penile/anal penetration) and allege five counts of penetration in the Oak Park case and

three counts of penetration in the Pontiac case, not the seventy or more penetrations estimated by

Complainant 1.  With respect to Complainant 2, the charges are tied to the specific number of acts

recalled by Complainant 2.   Moreover, although Valentine's victim was unable to provide

differentiating detail to support conviction on dozens of offenses, Complainants 1 and 2 provided

such detail at the preliminary examination and at trial.  It is possible to identify a sufficient number

of specific acts of penetration or sexual contact when one considers the variables of time, location,

persons present, and presence or absence of post-assault gifts.  Thus, the Michigan Court of Appeals'

factual findings in support of its determination are reasonable.

Further, even if *Valentine* were not distinguishable, it would not entitle Petitioner to

relief.  In *Coles v. Smith*, 577 F. App'x 502 (6th Cir. 2014), the Sixth Circuit considered and rejected

the same argument Petitioner raises here.   Joseph Coles was charged with "forty-three

undifferentiated counts of rape" of his stepdaughter.  *Coles v. Smith*, No. 1:10CV525, 2013 WL

474706 *1 (N.D. Ohio, Feb. 7, 2013).   The victim's testimony at trial disclosed dozens more

incidents of rape over the charged period.  *Id.* at *7.  The Sixth Circuit recognized that the indictment

in Coles' case was similar to the indictment it concluded was improper in *Valentine*.  *Coles*, 577

F. App'x at 507.  Nonetheless, the court refused to follow *Valentine* and grant habeas relief.  The

court explained:

> The *Valentine* court based its legal reasoning on Supreme Court cases applicable to
> federal indictments, *Russell*, 369 U.S. at 763–64; *Hamling*, 418 U.S. at 117–18, and
> a few circuit cases, including *Isaac v. Grider*, 211 F.3d 1269, 2000 WL 571959, at
> *4 (6th Cir.2000), *DeVonish v. Keane*, 19 F.3d 107, 108 (2d Cir.1994), *Fawcett v.
> Bablitch*, 962 F.2d 617, 618–19 (7th Cir.1992), and *Parks v. Hargett*, 188 F.3d 519,
> 1999 WL 157431, at *3 (10th Cir.1999).  Two of those cases, *DeVonish* and *Fawcett*,
> were decided before AEDPA was enacted in 1996, while *Isaac* and *Parks*—and
> *Valentine* itself—were decided before the Supreme Court issued *Renico* in 2010.  In
> light of *Renico's* admonition that "clearly established Federal law" means relevant

-12-

Supreme Court precedent and not circuit court opinions, *see Renico*, 559 U.S. at 778–79, and because "no Supreme Court case has ever found the use of identically worded and factually indistinguishable [state] indictments unconstitutional," *Valentine*, 395 F.3d at 639 (Gilman, J., dissenting), we doubt our authority to rely on our own prior decision—*Valentine*—to "independently authorize habeas relief under AEDPA." *Renico*, 559 U.S. at 779. Rather, Coles must point to a Supreme Court case that would mandate habeas relief in his favor. He has not done so, and consequently, he has not demonstrated that the decision of the Ohio Court of Appeals rejecting his Sixth Amendment claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Renico*, 559 U.S. at 779.

*Coles*, 577 F. App'x at 507-08 (parallel citations omitted). Put simply, neither *Valentine* nor the cases cited therein are clearly established federal law. They cannot be relied upon to authorize habeas relief.

Petitioner has failed to establish that the Michigan Court of Appeals determination with respect to the constitutional sufficiency of the notice provided by the charges is contrary to or an unreasonable application of clearly established federal law. Accordingly, his habeas challenge to sufficient notice is without merit.

II.    Flawed jury instructions

Petitioner next contends that the jury instructions violated his due process rights because they, like the charges, failed to sufficiently differentiate between the charged offenses. The Sixth Circuit described the clearly established federal law with respect to erroneous jury instructions as follows:

In general, the fact that a jury instruction was allegedly incorrect under state law is not a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); *Byrd v. Collins*, 209 F.3d 486, 527 (6th Cir. 2000). On habeas review, federal courts ask "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Estelle*, 502 U.S. at 72. It is not enough that the instruction was "undesirable, erroneous, or even 'universally condemned.'" *Estelle*, 502 U.S. at 72 (citing

-13-

> *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  In evaluating the impact of
> the instruction, courts consider the claim in the context of the instructions and the
> trial record as a whole.  *Cupp*, 414 U.S. at 147.  The Supreme Court has defined the
> subcategory of infractions that constitute constitutional violations very narrowly.
> *Estelle*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

*Ambrose v. Romanowski*, 621 F. App'x 808, 813 (6th Cir. 2015).

The Michigan Court of Appeals resolved Petitioner's challenge as follows:

The trial court first instructed the jury that, in Case No 07-214774-FC, Fathi
was charged, in counts 1 through 5, with CSC I.  The trial court specified that the
crimes were alleged to have occurred on or about April 2000 through August 2000
in Oak Park.  The trial court further explained that these counts related to
[Complainant 1], when he was younger than 13 years old, and then the trial court
gave the elements of CSC I.  The jury was further instructed that, in the same case
and same time frame, Fathi was charged in counts 6 and 7 with CSC IV with respect
to [Complainant 2], when he was 13, 14, or 15 years old.  The trial court gave the
elements for that crime as well.

The trial court next told the jury that, in Case No 07-214813-FC, in counts
8, 9 and 10, Fathi was again charged with CSC I with respect to [Complainant 1]
when he was younger than 13, and the acts were alleged to have occurred on or about
May 22, 1999, through May 22, 2000, in Pontiac.  The trial court repeated the
elements of CSC I.

Finally, the trial court instructed the jury that, in Case No. 07-215223-FH,
Fathi was charged, in counts 11 and 12, with CSC II alleged to have occurred in
Spring or Summer 1997, in Madison Heights, with respect to [Complainant 2] when
he was younger than 13.  The trial court again gave the elements for CSC II.  The trial
court then specified that Fathi was charged with CSC II in counts 13 and 14, which
also involved [Complainant 2] when he was younger than 13, and occurred in Spring
or Summer 1998 in Madison Heights.  The trial court gave the elements of CSC II
a third time.  Moreover, the verdict forms also included each count, the related
victim, the city where the act was alleged to have occurred, and the time frame.

After further instruction, the trial court again summarized the charges in each
case, the counts, the victims, the time frame, and the city.  Thus, the trial court
presented the case to the jury in an understandable manner, and the instructions
included all the elements of the charged offenses. Moreover, the trial court instructed
the jury, "[T]hese are separate crimes, . . . and the prosecutor is charging the
defendant committed all of them.  You must consider each crime separately in light
of all the evidence in the case.  You may find the defendant guilty of all, any one, any

-14-

> combination of these crimes, or not guilty." Thus, even if there had been error, Fathi
> suffered no prejudice because "[j]urors are presumed to follow their instructions, and
> instructions are presumed to cure most errors."

*Fathi*, 2010 WL 2836275 *5-6 (footnotes omitted). Petitioner contends the court of appeals'

resolution is wrong, but cites only *Valentine,* 395 F.3d at 626*,* in support. As set forth above, a

determination that is contrary to or an unreasonable application of *Valentine* does not warrant habeas

relief. Moreover, the court of appeals determination here is not contrary to *Valentine*. As set forth

above, the testimony at the preliminary examinations and at trial permit differentiation between

charged acts here. It is possible to identify a sufficient number of specific acts of penetration or

sexual contact when one considers the variables of time, location, persons present, and subsequent

gifts. Therefore, Petitioner is not entitled to habeas relief based on the jury instructions.

### III.   Double jeopardy

Petitioner also argues that the lack of specificity in the charges subjects him to a risk

of being twice put in jeopardy for the same offense. The Double Jeopardy Clause guarantees that

no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S.

CONST. amend. V. This clause provides three separate guarantees: (1) it protects against a second

prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the

same offense after conviction; and (3) it protects against multiple punishments for the same offense.

*See North United States v. Dixon*, 509 U.S. 688, 696 (1993); *Illinois v. Vitale*, 447 U.S. 410, 415

(1980); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

In rejecting Petitioner's argument, the Michigan Court of Appeals concluded that any

claim for violation of the Double Jeopardy Clause was premature because Petitioner "ha[d] not been

subjected to a second prosecution for an event occurring during the same time period." *Fathi*,

2010 WL 2836275 at *6.  Petitioner does not identify any clearly established federal Double Jeopardy Clause law which the court of appeals applied unreasonably or to which the court of appeals' determination is contrary.  Instead, Petitioner cites three cases (*Russell v. United States*, 369 U.S. 749 (1962); *Isaac v. Grider*, 211 F.3d 1269 (6th Cir. 2000) and *Valentine*, 395 F.3d at 626) for the proposition that multiple identically worded charges create a risk of a double jeopardy violation which, in turn, violates Petitioner's due process rights.  For the reasons set forth by the Sixth Circuit in *Coles*, 577 F. App'x at 507-08, quoted above, Petitioner's proposition, though it may find some support in the three cases he cites, is not supported by clearly established federal law and cannot form the basis for habeas relief.

Moreover, even if *Valentine* were clearly established federal law, Petitioner's case can be readily distinguished.  The various offenses in *Valentine* were indistinguishable, even after the victim testified at trial.  That is not the case here.  *See Coles*, 577 F. App'x at 508 (distinguishing *Valentine* because here "the victim described the sexual abuse to the jury in specific factual detail . . . .") (citing *Bruce v. Welch*, 572 Fed.App'x 325, 330, 2014 WL 3360686, at *5 (6th Cir. July 10, 2014) (observing that "even if we assume that *Valentine* and *Russell* represent clearly established federal law, the facts of petitioner's case are sufficiently distinguishable from that authority" and "petitioner was provided with constitutionally adequate notice of the charges against him"); *Hardy v. Beightler*, 538 Fed.Appx. 624, 629 (6th Cir.2013) (distinguishing *Valentine*, noting the sexual assault prosecution "did not present the problems highlighted by this Court in *Valentine* " and "the record in this case allows us to be sure what double jeopardy would prohibit in the event of future proceedings because we can be sure of the factual incidents upon which the jury based its verdict"); *Cowherd v. Million*, 260 Fed.Appx. 781, 786–87 (6th Cir.2008) (per curiam) (holding the adult

victim's trial testimony provided the necessary factual predicate for six sexual offense convictions and the testimony cured any defects in the indictment's drafting; "[t]he confluence of the charges, the trial testimony, and the jury verdicts ... ensures both that Cowherd could successfully plead these convictions as a bar to any future prosecution based upon these acts, and that Cowherd was punished only for these six crimes and only once for each of the six offenses")).

Petitioner's due process challenge based on a risk of double jeopardy has no merit.

IV.    Other acts evidence

Petitioner complains that his trial was rendered fundamentally unfair by the admission of "other acts" evidence in the form of testimony from Victims A, B, and C and the certified copy of Petitioner's conviction for fourth-degree criminal sexual conduct relating to a female victim.  The trial court determined the evidence was admissible under MICH. COMP. LAWS § 768.27a.[4]  Petitioner also contends that the references by one or more witnesses indicating that the "other acts" committed with respect to Victims A, B, and C resulted in charges, similarly rendered his trial unfair.

In the state courts, Petitioner raised his challenges to the admission of evidence principally as violations of state law.  Petitioner first argued that some of the "other acts" evidence was inadmissible even under MICH. COMP. LAWS § 768.27a  (App. Br., ECF No. 11-19, PageID.1313-14.); that despite MICH. COMP. LAWS § 768.27a, the "other acts" evidence was inadmissible under Michigan Rule of Evidence 404(b) (*Id*., PageID.1309-18, 1321-22); or, alternatively, inadmissible because it was more prejudicial than probative under Michigan Rule of

---

[4]MICH. COMP. LAWS § 768.27a(1) provides "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant."

Evidence 403 (*Id.*).  The admission of all of the inadmissible propensity evidence, Petitioner then argues, rendered his trial unfair and violated his right to due process.

The admissibility of the evidence under MICH. COMP. LAWS § 768.27a or Michigan Rules of Evidence 404(b) and 403, are purely issues of state law.  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  Thus, the Michigan Court of Appeals determinations that the "other acts" evidence was admissible under MICH. COMP. LAWS § 768.27a, despite Michigan Rules of Evidence 404(b) and 403, conclusively resolves those state law issues.

That leaves Petitioner to the very limited review afforded to state-court evidentiary rulings under the Due Process Clause.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552.  Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.  The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict

with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Petitioner has not met this difficult standard. There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence. In *Estelle*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n. 5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has also found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Petitioner's habeas challenge to the admissibility of the "other acts" evidence, whether that evidence was admitted in the form of victim testimony, certified conviction record, or reference to other pending charges, is without merit.

V.    Expert testimony

Petitioner claims the introduction of expert testimony from Amy Allen, a social worker employed at Care House of Oakland County, regarding the dynamics of sexual abuse and

-19-

common characteristics of children who allege sexual abuse, also rendered his trial fundamentally unfair.

Although Petitioner coats his argument with a layer of constitutional gloss by claiming the evidence rendered his trial fundamentally unfair, the argument at its heart relates to admissibility under state or federal law, not the federal constitution.  In support of his argument, Petitioner cites only Michigan Rule of Evidence 702 and two cases interpreting Federal Rule of Evidence 702: *Daubert v. Merrell-Dow Pharmaceuticals*, 509 U.S. 579 (1993), and *First Tennessee Nat. Ass'n v. Barreto*, 268 F.3d 319 (6th Cir. 2001).

The Michigan Court of Appeals considered only whether Amy Allen's testimony was admissible under Michigan Rule of Evidence 702 and cases interpreting and applying that rule. It determined that Ms. Allen's testimony was admissible under the rule.  That determination is binding on this Court.   *Stumpf*, 722 F3d at 746 n.6 ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'") (quoting *Bradshaw*, 546 U.S. at 76).

Moreover, whether or not the expert testimony would be admissible under Federal Rule of Evidence 702 or *Daubert* is immaterial on habeas review.  *See Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998) ("*Daubert* concerned the Federal Rules of Evidence which is not relevant to [federal habeas review of] appellant's [state court] conviction.")  As this Court stated in *Bal v. McKee*, No. 1:10-cv-21, 2010 WL 707356 (W.D. Mich. Feb. 23, 2010):

> [T]he Federal Rules of Evidence apply in federal trial proceedings, not in state trial proceedings.  The Supreme Court strictly engaged in statutory construction in interpreting Rule 702 in *Daubert*.  *See* 509 U.S. at 587.  The [Supreme] Court has never indicated that a failure to follow Federal Rule of Evidence 702 or *Daubert* rises to the level of a constitutional violation.  As a consequence, Petitioner cannot show

that the state court's evidentiary determination was either contrary to or an unreasonable application of established Supreme Court precedent.

*Bal*, 2010 WL 707356 at *12.  Petitioner's argument here suffers the same fate: he cannot show that the admission of Ms. Allen's expert testimony was contrary to or an unreasonable application of established Supreme Court precedent.  Accordingly, his habeas issue is without merit.

VI.    Flight instruction

Petitioner next complains that the trial court instructed the jury as follows:

There has been some evidence that the defendant ran away after the alleged crime. This evidence does not prove guilt.  A defendant may run or hide for innocent reasons, such as panic, mistake or fear.  However, a person may also run or hide because of a consciousness of guilt.  You must decide whether the evidence is true, and if true, whether it shows that the defendant had a guilty state of mind.

(Trial Tr. III, ECF No. 11-17, PageID.1201.)  The Michigan Court of Appeals rejected Petitioner's challenge:

"It is well established that evidence of flight is admissible to show consciousness of guilt."  "Such evidence is probative because it may indicate consciousness of guilt, although evidence of flight by itself is insufficient to sustain a conviction."  In addition, "[t]he term 'flight' has been applied to such actions as fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape custody."  Nevertheless, "[f]light can result from factors other than guilt, and it is for the jury to determine what caused defendant to flee."

[Victim A] testified that in August 2000, the police came looking for Fathi at the Oak Park residence where both he and Fathi lived, but [Victim A] did not know where Fathi was.  It was no secret that the police were looking for Fathi in regard to [Victim C's] allegations.  And although Fathi's belongings were still in the Oak Park house at that time, Sergeant Bergman later discovered that Fathi had been staying with his sister in New Jersey since mid-August 2000.  Thus, the prosecution presented ample circumstantial evidence of flight. . . .  Fathi was not prejudiced by the trial court's accurate statement of the law regarding flight, and therefore, there was no plain error warranting reversal.

*Fathi*, 2010 WL 2836275 at *13-14 (footnotes and headings omitted).

-21-

Petitioner now argues that the instruction undermined the presumption of innocence and the burden of proof.  In support of his position he offers several federal criminal decisions where the Supreme Court or the federal circuit courts reached conclusions regarding the value of flight evidence.  The only firm conclusion supported by the cited cases is that evidence of flight, *standing alone*, was insufficient to establish guilt.  The trial court states as much in the instruction:  "There has been some evidence that the defendant ran away after the alleged crime.  This evidence does not prove guilt."  (Trial Tr. III, ECF No. 11-17, PageID.1201.)  The Michigan Court of Appeals also acknowledged that principle of law.

None of the decisions Petitioner cites regarding evidence of flight or jury instructions regarding that evidence, are habeas decisions grounded in the federal constitution.  The two habeas decisions cited by Petitioner, *Mullaney v. Wilbur*, 421 U.S. 684 (1975), and *Cage v. Louisiana*, 498 U.S. 39 (1990), have nothing to do with evidence of or jury instructions regarding flight.  Indeed, it is difficult to ascertain any link between the holdings in *Mullaney* and *Cage*, holdings that have been significantly circumscribed by subsequent decisions,[5] and the instruction offered at trial regarding Petitioner's flight.

As set forth in Section II, *infra*, to prevail in his claim that the instruction violated his due process rights Petitioner must show prejudice.  The court of appeals concluded that Petitioner failed in that showing.  Petitioner has failed to show that the court of appeals' determination is

---

[5]*See Estelle v. McGuire*, 502 U.S. 62, 72 n.4 (1991) ("So that we may once again speak with one voice on this issue, we now disapprove the standard of review language in *Cage* and *Yates* . . . . "); *United States v. Ebbole*, 917 F.2d 1495, 1498-99 (7th Cir. 1990) (recognizing that the proposition advanced in *Mullaney* was in some respects  abandoned in *Patterson v. New York*, 432 U.S. 197 (1977)).

contrary to or an unreasonable application of clearly established federal law; accordingly, his habeas claim is without merit.

VII.   The Swedish conviction

Petitioner's next challenge relates to his sentences rather than his convictions.  He argues that the trial court relied on a Swedish conviction as one of four reasons when it departed from the sentencing guidelines.  Petitioner contends such reliance was inappropriate because the conviction was entered without the appropriate guarantees of due process, was a misdemeanor, and was overturned.  The Michigan Court of Appeals rejected the premise of Petitioner's argument:

> Fathi argues that the trial court should not have considered his Swedish conviction without a showing that it was obtained in a constitutionally permissible manner and contends that no other country's system incorporates the due process rules that have been deemed necessary in the United States.
>
> It is true that a trial court may consider convictions from other jurisdictions, as long as the court is convinced that the defendant was afforded due process in that system.  Foreign convictions, specifically, "may be considered in sentencing, subject to the requirement of a showing on a case-by-case basis that the criminal justice system of the country in question provided defendant with sufficient due process safeguards."
>
> Here, however, the trial court did not explicitly consider the Swedish conviction when articulating its reasons for departure.  Specifically, the trial court stated, "The sentence guidelines do not take into account [Fathi]'s assault of children in Sweden.  [Fathi] continued his deviant conduct during his flight from justice, which makes him a threat to all children."  Clearly, the trial court focused its rationale on the recidivistic and relentless nature of Fathi's conduct-that is, that even when on the run from law enforcement, he persisted in continuing his assaultive behavior.  The fact of his conviction was irrelevant.
>
> In sum, we conclude that the trial court did not abuse its discretion in its upward departure from the sentencing guidelines.

*Fathi*, 2010 WL 2836275 at *17 (footnotes omitted).

-23-

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 131 S. Ct. at 14; *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67-68; *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley v. Harris*, 465 U.S. 37, 50 (1984)). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404

-24-

U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence.  *Tucker*, 404 U.S. at 447.

Petitioner argues that the facts relied upon by the court at sentencing were materially false in that the Swedish conviction was procedurally unworthy of reliance and ultimately overturned.[6]  But, the court of appeals found the trial court did not rely on the conviction.  That finding is presumed correct.  Petitioner has failed to overcome the presumption with clear and convincing evidence.

The court of appeals determined that the trial court relied on Petitioner's conduct, not his conviction, when the court mentioned Petitioner's conduct in Sweden as one of four factors that warranted an upward departure from the sentencing guidelines.  That determination is reasonable on this record.  Petitioner's focus on procedural differences or the overturning of the conviction is simply misdirected.

There is some evidence in the record, supplied by Petitioner in connection with his motion to remand filed during the pendency of his appeal in the Michigan Court of Appeals, regarding his conduct in Sweden.  Petitioner offered his own affidavit.  (Pet. Affidavit, ECF No. 11-19, PageID.1413-14.)  Petitioner's affidavit did not address the Swedish assault or conviction.  Petitioner avers that he did not flee Michigan in August of 2000.  Instead, on behalf of the CIA, he went first to New Jersey to learn Arabic and ultimately to Iraq where he performed top secret work.

---

[6]Petitioner mentions the fact of procedural differences, but does not provide any evidence as to the scope and nature of such differences.  Moreover, Petitioner provides no evidence that the conviction has been overturned.

(*Id.*)  He then returned to Sweden where he was provided a Swedish identity and passport.  (*Id.*)
Petitioner also offered the affidavit of Yvonne Skuthalla that included the following cryptic
averment:

> In January of 2005, two FBI agents came to my house and identified themselves as
> Thomas L. Reiner and David J. Miller.  They told me they needed [Fathi's] help with
> some international security questions and that he had helped them before.  They told
> me it was important for me to cooperate with them and keep quiet about it.  They also
> told me to lie about [Fathi] and to tell my son, Kenny, to lie and accuse [Fathi] of the
> bad acts he was later convicted of in Sweden (involving Annelie).

(Affidavit, ECF No. 11-19, PageID.1416.)

The Michigan Court of Appeals apparently did not find Petitioner's submissions
convincing.  The court of appeals denied the motion to remand.  (Mich. Ct. Appeals Order, ECF No.
11-19, ECF No. 1438.)  Such a determination is certainly not unreasonable on this record.  Petitioner
has failed to offer any clear and convincing evidence to overcome the presumptively correct findings
of the state court with respect to Petitioner's assaultive behavior in Sweden.  Whether Petitioner was
charged, tried, or convicted of that conduct is immaterial.

As Petitioner has framed the issue, it simply cannot be said that the state-court's
rejection of Petitioner's claim was based on an unreasonable determination of the facts or was
contrary to or an unreasonable application of established Supreme Court precedent.  28 U.S.C.
§ 2254(d).  Petitioner's habeas challenge to his sentences has no merit.

VIII.   Ineffective assistance of counsel

Finally, Petitioner contends his trial counsel was ineffective for failing to raise the
issues discussed in Sections I, II, and III above.  In *Strickland v. Washington*, 466 U.S. 668, 687-88
(1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective

assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).

The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.  "When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'"  *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697).  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Strickland*, 466 U.S. at 697.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen*

*v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those

circumstances, the question before the habeas court is "whether there is any reasonable argument that

counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th

Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing

on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at

102).

      The Michigan Court of Appeals rejected each claim of ineffective assistance that

Petitioner raised.  The court stated:

> Fathi received adequate notice of the charges against him, his jury was properly
> instructed, and his right against double jeopardy was not violated. "Counsel is not
> ineffective for failing to advocate a meritless position."

*Fathi*, 2010 WL 2836275 at *7.  As the Michigan Court of Appeals recognized, counsel's failure to

make a meritless objection or motion does not constitute ineffective assistance of counsel.  *See Smith*

*v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir.

2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204

F.3d 681, 683 (6th Cir. 2000).  "Omitting meritless arguments is neither professionally unreasonable

nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

      As set forth above, as a matter of federal constitutional law, the issues Petitioner

claims his counsel failed to raise have no merit.  Based on the Michigan Court of Appeals analysis,

the same is true with respect to Petitioner's claims as a matter of state law.[7]  Accordingly, Petitioner's

ineffective assistance claims have no merit.

---

[7]The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright*, 464 U.S. at 84; *Stumpf*, 722 F.3d at 746 n.6) (quoting *Bradshaw*, 546 U.S. at 76) ("'[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'").

## Conclusion

In light of the foregoing, the Court will deny Petitioner's application because it fails to present a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack*

*v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:     October 17, 2016         /s/ Robert J. Jonker    
                                     ROBERT J. JONKER
                                     CHIEF UNITED STATES DISTRICT JUDGE